## BLAKENEY v. LAFAYETTE.

No. 14519—Opinion Filed Oct. 16, 1923.

(Syllabus.)

**Public Lands—Sale of Capital Building Lands—Construction of Statutes.**

Under the provisions of H. B. 543, chap. 298, Sess. Laws 1919, authorizing the sale and disposition of lands donated to the state and accepted by the state under previous legislative acts, no limitation as to the time in which said lands may be disposed of is placed upon the authorized officers of the state by said H. B. 543, Sess. Laws 1919.

Original action in the Supreme Court by B. B. Blakeney for writ of mandamus to compel Ben F. Lafayette, Chairman of the State Board of Public Affairs, to deliver to said plaintiff a deed to certain lands. Writ ordered to be issued.

Blakeney & Ambrister, for plaintiff.

Geo. F. Short, Atty. Gen., for defendant.

HARRISON, J. This is a special proceeding as defined by article 1, ch. 3, Comp. Stat. 1921, and authorized by article 12 of said chapter, and originally brought in this court because of its public importance and character; the object of the proceeding being for writ of mandamus, compelling Ben F. Lafayette, chairman of the State Board of Affairs, to deliver to plaintiff a deed to the following tract or parcel of land situated in Oklahoma county, Oklahoma, to wit: The southeast quarter of southeast quarter of southeast quarter of section 22, township 12, north, range 3 W. I. M., embracing 10 acres, more or less.

The grounds for the proceeding are that plaintiff contracted with the officers of the state authorized by law to make such contract for the purchase of the foregoing tract for the sum of $10,000; that pursuant to said contract of sale and purchase between plaintiff and said authorized officers, a deed of conveyance by the officers authorized by law so to do was executed conveying said tract to plaintiff; that such deed of conveyance was placed in the hands of defendant, Ben F. Lafayette, chairman of the State Board of Affairs, for delivery to plaintiff upon payment by plaintiff of the purchase price, and thereupon plaintiff tendered said purchase price $10,000, and demanded delivery of deed to the land; that said Ben F. Lafayette, as chairman of the State Board of Affairs, refused to deliver said deed to plaintiff for the reason that he entertained and felt a doubt as to his authority to do so under the law at this time.

It is set forth in the affidavit in support of the motion for the writ prayed for that the tract in question is a portion of the land acquired by the state by donation of lands by the city of Oklahoma City for the purpose of a Capitol site and executive mansion and Capitol building purposes, and duly accepted by legislative act, and that the contract for sale on the part of the state officers and contract for purchase on the part of plaintiff was duly made and entered into in conformity with the provisions of Session Laws 1913 and Session Laws 1919, and fully consummated, with the exception of the delivery of deed and acceptance of purchase price; that plaintiff has tendered and now tenders said purchase price and asks that defendant be required to accept said purchase price and deliver said deed.

In defendant's answer and reply to plaintiff's motion it is said:

"That in the present case of attempted sale by virtue of the above mentioned act all the preliminary requirements upon the part of plaintiff have been complied with and the procedure followed by the Board of Public Affairs and the Commissioners of the Land Office has been in conformity with the act cited, supra.

"That Ben F. Lafayette, chairman of the State Board of Public Affairs, has refused to deliver the deed of conveyance in this particular instance and that said refusal to deliver deed is based on a doubt as to whether at this time the Board of Public Affairs is authorized to convey the said property and whether he as such chairman is authorized to deliver said deed."

Hence it appears that the only question involved and the only grounds for defendant's refusal to deliver the deed is a doubt as to

his authority to do so at this time, 31 months after the passage of the act making an appriation for and authorizing the sale of the authorized lands for the purpose of improving the Capitol grounds.

The provisions of the act accepting the lands in question are agreed upon, and likewise the provisions of the act authorizing the sale of said lands are agreed upon, the same being House Bill 543, chap. 298, Sess. Laws 1919; and it is further agreed that the provisions of said act have in all things been complied with by the contracting parties, the only point of doubt being whether the chairman of the State Board of Affairs is authorized, or was authorized at the time the contract of sale was made to deliver the deed after the lapse of 31 months from the passage of the act which, with the exception of the emergency clause, in its entirety, is as follows:

"There is hereby appropriated from any moneys in the State Treasury not otherwise appropriated, the sum of $200,000 or so much thereof as may be necessary for the purpose of acquiring additional land adjacent to or in the vicinity of the State Capitol building and grounds and of beautifying such land, and of beautifying the street known as Lincoln boulevard leading from the Capitol to the intersection of Sixteenth street, or that part of Lincoln boulevard abutting any lands which may be purchased hereunder, and in all proper ways improving said land and boulevard; provided, however, that no more than $3,000 per acre shall be paid for said land unless acquired by condemnation proceedings; such purchase or acquiring, paving, parking, beautifying and general improvement to be done by the State Board of Public Affairs as herein provided. Said board is hereby empowered and directed to employ George E. Kessler, for a compensation not to exceed $5,000 to be paid from the sum herein appropriated, to make plans for and to supervise the improvement and beautification of the lands so to be acquired and such boulevard; and such work shall be done in accordance with such plans as from time to time may be added to or modified by such landscape architect. When tentative plans shall have been made, said board shall seek to acquire by purchase from the owner or owners thereof, not to exceed approximately 40 acres of land adjacent to and in the vicinity of the Capitol building and grounds comprehended in such plans, and, if able to agree upon a reasonable purchase price therefor, or upon an exchange therefor or for any part thereof, as hereinafter provided, such lands, or any part thereof, may with the approval of the Governor be purchased or acquired by exchange; and, if purchased, the purchase price shall be paid from the sum herein appropriated. If, however, said board be unable to agree with the owner or owners upon the purchase price thereof, then the Attorney General shall, upon the request of the Governor, institute proceedings in condemnation to acquire such land or part thereof, such proceedings to be conducted in the name and on behalf of the state in the manner provided by law for the condemnation by railway companies of lands necessary to their use; and the condemnation moneys required in such proceedings shall be paid from the sum herein appropriated; upon the making of the award or upon final judgment, as provided by such laws, and at the times herein provided. When such lands shall have been so acquired, or when, under such proceedings, the right to enter upon such lands shall exist, said board shall proceed, from any moneys remaining in the improvement fund in this act provided or from such portions of such fund as may be necessary for the purpose, to pave such boulevard and beautify and otherwise generally improve such land and such boulevard in accordance with such plans; the work of improvement, paving and beautification to be either contracted for or done as provided by law for the governance of said board; provided, that said Board of Public Affairs is hereby authorized and empowered with the approval of the Governor, to exchange for lands or any part thereof above provided to be acquired, any, or so much as necessary, of the lands of the state known as 'Capitol Building Lands' upon such terms as may be reasonably agreed upon; and, in event such exchanges cannot be made by agreement, or in event all of such lands so to be acquired cannot be acquired by such exchange, then said board may, likewise with the approval of the Governor, sell such of said Capitol building lands as may be necessary to realize a sum not to exceed $200,000, which sum, or so much thereof as shall be necessary to complete such purchase, acquiring, improvement, paving and beautification, is also appropriated and shall be used for the same purpose and expended in the same manner as other sums hereinbefore mentioned. Upon any sale or exchange of such Capitol building lands, it shall be the duty of the Commissioners of the Land Office, and they are hereby directed, to make adequate deed of conveyance thereof to the purchaser or acquirer thereof upon being notified of the fact of the sale or exchange thereof by the said Board of Affairs."

There is no limitation in the foregoing act as to when the things authorized to be done shall be done; in fact it would be impracticable to fix a definite period in which a contract relating to the subject of improvement, beautifying, and maintaining the Capitol grounds should be made, and it being conceded that the law has in all things been complied with by the contracting parties and that the parties to the contract are satisfied with its terms and consideration, we see no reason why the writ should not issue.

It is therefore ordered that a writ of mandamus be issued to the said Ben F. Lafayette, chairman of the State Board of Affairs, requiring him to deliver the deed in question upon payment by plaintiff of the purchase price, and it is so ordered.

JOHNSON, C. J., and KENNAMER, NICHOLSON, COCHRAN, BRANSON, and MASON, JJ., concur.